IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |  |
|---|---|---|
| Murray Adkins III, #264418, | ) | C/A No.: 1:12-3131-MGL-SVH |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | REPORT AND RECOMMENDATION |
|  | ) |  |
| Warden of Kirkland Correctional | ) |  |
| Institution, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

Petitioner Murray Adkins III is an inmate at the Kirkland Correctional Institution
of the South Carolina Department of Corrections who, through counsel, filed this petition
for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court
pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report
and Recommendation on Respondent's return and motion for summary judgment. [Entry
#10, #11]. The matter having been fully briefed [Entry #17, #21, #22], it is ripe for
disposition.

Having carefully considered the parties' submissions and the record in this case,
the undersigned recommends that Respondent's motion for summary judgment be
granted. Specifically, the habeas petition is barred by the applicable statute of
limitations, and Petitioner's claims are not saved by an actual innocence exception.

I.    Factual Background

On March 2, 1998, a drug deal went awry, resulting in the deaths of three people.
The evening began with a phone call from Greg Sims ("Sims") to Josh Cramer that

Tyrone Anthony, Marcus Hinton, and Ryan Sims ("Ryan") wanted to purchase drugs. Hinton drove Anthony, Ryan, and Sims in a Honda to Cramer's house to inspect the drugs. Sims stayed at Cramer's house while Anthony, Hinton, Cramer, and Ryan drove around in the Honda to inspect Cramer's pound of marijuana. At some point, Cramer passed the marijuana to Anthony, who passed it to Ryan, who immediately jumped out of the Honda and ran away with the marijuana. Hinton drove back to Cramer's house and picked up Sims. After unsuccessfully searching for Ryan, Cramer fatally shot Anthony and Hinton, and with Sims' help, placed their bodies in the trunk of the Honda.

Needing help to dispose of the bodies, Cramer and Sims drove to Kimbell Lee's house. Cramer testified that he and Lee discussed needing to kill Sims because he could implicate Cramer in the killings. Lee paged Petitioner, who up to that point, had had not involvement in the matter. Cramer left the Honda in a secluded area, and thereafter rode in Lee's Grand Am with Sims to an apartment where Petitioner had been visiting with Anna Stanley. After Lee privately informed Petitioner that Cramer had just killed two people, Petitioner told Stanley they had to leave. Stanley dropped Petitioner off at Lee's uncle's home, where Cramer, Lee, and Sims picked up Petitioner.

Cramer, Sims, Lee, and Petitioner collectively decided to burn the Honda with the bodies in it. Lee drove Cramer and Sims to the Honda, which Cramer and Sims set on fire. Cramer pointed a gun at Sims's head and pulled the trigger, but the gun did not fire. Cramer and Sims ran to meet Lee and Petitioner at Lee's car, and Lee drove Cramer home. Cramer testified that he went into his house, where Petitioner asked him for his

2

pistol and/or rifle, neither of which was functional.  Cramer testified that Petitioner told him "that he would just get his own gun."  Cramer claimed no further knowledge of what happened the rest of the night.

Meanwhile, Lee, Petitioner, and Sims drove from Cramer's house to dispose of the gun Cramer had used to kill Anthony and Hinton. They drove to a dirt road in Van Wyck in Lancaster County and exited the car.  Petitioner instructed Lee to "go look for a place to stash [the gun] like a tree trunk or a rock."  Lee testified that he was standing to the right of the car while Sims and Petitioner were to the left of the car.  Lee testified that "about that time I looked up, and [Petitioner] just raised up and just started shooting; just shot Greg [Sims] about six or seven times."  Lee testified he and Petitioner returned to the car approximately twenty feet away from where the shooting occurred and immediately left the scene.

Cramer returned to the original scene of the drug deal to retrieve his pager, which he had earlier dropped. Cramer checked his pager and retrieved his voice mail, which he testified sounded like Petitioner's voice, stating "I took care of that."

The following morning, Deputy Lonnie Vinesett of the Lancaster County Sheriff's Office received an anonymous call of a suspicious person lying on the side of the road. The body was that of Sims. Deputy Vinesett described the body as someone who appeared to be taking a nap: lying on his back, with his head propped up on a tree, hands in the coat pockets, and legs crossed at the ankle.  A hat was covering Sims' face. Deputies observed blunt trauma to the face.

II.    Procedural Background

Petitioner was indicted by the Lancaster County grand jury during the June 1998 term of court for Sims' murder (1998-GS-29-838) and possession of a firearm during the commission of a violent crime (1998-GS-29-839). [Entry #24-6 at 73–74, 76]. Petitioner was represented by James M. Morton, Mitchell A. Norrell, and Mandy Norrell, Esquires, at trial February 14–17, 2000, before the Honorable Paul E. Short Jr., Circuit Court Judge. [Entry #24 at 4 *et seq.*].  Petitioner was found guilty of both offenses [Entry #24-4 at 13–14], and Judge Short sentenced him to life imprisonment for murder and to five years for possession of a firearm during the commission of a violent crime. *Id.* at 19.

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). *Id.* at 23. On appeal, Petitioner was represented by Robert M. Dudek, Esquire, of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a brief (*id.* at 24–55) raising the following issues:

1.    Whether the judge erred by giving a confusing jury instruction regarding having a reasonable doubt "whether or not the defendant has made out his defense," and by instructing the jury on the "failure of the defendant to testify," and by then refusing defense counsel's reasonable request to give a curative instruction to clarify reasonable doubt, and to clarify appellant did not have any obligation to prove anything, since the purpose of a jury instruction is to enlighten and not to confuse?

2.    Whether the judge erred by allowing the victim's mother to testify about the victim's participation in high school athletics at Northwestern and Rock Hill High Schools, since the solicitor was seeking to evoke sympathy for the victim through his mother's irrelevant testimony?

*Id.* at 27.

4

After hearing oral arguments, the Court of Appeals affirmed Petitioner's convictions in a published opinion filed on January 6, 2003. *State v. Adkins*, 577 S.E.2d 460 (S.C. Ct. App. 2003). *Id.* at 78–92. On January 22, 2003, the remittitur was issued to the Lancaster County Clerk of Court. [Entry #24-5 at 1]. However, Petitioner filed a Petition for Rehearing on the same date. [Entry #24-4 at 94–99]. On January 24, 2003, the Court of Appeals filed an Order Recalling Remittitur. [Entry #24-5 at 20–21]. After briefing, the Court of Appeals denied rehearing in an unpublished order filed on March 20, 2003. *Id.* at 23. Petitioner filed a Petition for Writ of Certiorari on June 20, 2003, *id.* at 26–51, raising the following three claims:

1. Whether the Court of Appeals erred by holding that an erroneous jury instruction regarding having a reasonable doubt "whether or not the defendant has made out his defense," was not reversible error, since merely superimposing good law or bad law is only confusing, and the trial court here refused Petitioner's reasonable request to give a prepared curative instruction to clarify reasonable doubt?

2. Whether the Court of Appeals erred by holding that a jury instruction that contained repeated references to Petitioner's "failure of the defendant to testify" was not reversible error since the Court of Appeals correctly found the instruction raised the inference petitioner had neglected a duty, and the purpose of jury instructions are to enlighten and not to confuse?

3. Whether the Court of Appeals erred by finding no abuse of discretion in the trial court allowing the decedent's mother to testify about the decedent's participation in high school athletics at Northwestern and Rock Hill High Schools, since the solicitor was impermissibly seeking to evoke sympathy for the victim in violation of *State v. Livingston* and *State v. Langley*?

*Id.* at 28. On February 19, 2004, the South Carolina Supreme Court denied the petition. *Id.* at 24–25. The remittitur was issued on February 23, 2004.[1]

Through his collateral counsel, John D. Delgado Jr., Esq., Petitioner filed an application for post-conviction relief ("PCR") on October 25, 2004, *id.* at 81–87, which Respondent claims it did not receive until December 12, 2005. [Entry #10 at 3]. In his PCR application, Petitioner alleged ineffective assistance of counsel, arguing "[m]y attorney moved into evidence certain pictures and other things which caused me to lose the last closing argument. I was prejudiced by this mistake." [Entry #24-5 at 83].

A PCR evidentiary hearing was held before the Honorable Kenneth G. Goode on August 8, 2006, at which Petitioner and Mr. Delgado appeared. *Id.* at 93 *et seq*. On November 8, 2006, Judge Goode entered an order of dismissal. [Entry #24-6 at 52–62].

On December 15, 2006, Petitioner filed a motion to alter or amend judgment, *id.* at 63–66, which was denied on January 3, 2007. *Id.* at 72.

Petitioner timely appealed, and on May 10, 2007, filed a petition for writ of certiorari [Entry #24-7], stating the following issues:

I.    Did the PCR court err in finding that trial counsel's actions were proper where, after trial counsel introduced several photographs in the state's case in chief, trial counsel erroneously advised Petitioner the right to make the last closing argument had been secured and accordingly advised Petitioner not to take the stand in his own defense?

II.   Did the PCR court err in finding that trial counsel, after failing to secure the last closing argument after a failed reliance on "Morton on Law," acted

---

[1] The undersigned has been unable to locate a copy of this remittitur in the record.

6

reasonably where trial counsel did not move to reopen the testimony so Petitioner could testify on his own behalf?

*Id.* at 5. The South Carolina Supreme Court denied certiorari on April 16, 2008. [Entry #10-12]. The remittitur was issued on May 2, 2008. [Entry #10-13].

Petitioner filed this federal petition for a writ of habeas corpus on October 30, 2012. [Entry #1]. On December 13, 2012, Petitioner filed a motion for leave of court to conduct discovery [Entry #8], which Respondent opposed [Entry #9].

On January 9, 2013, Respondent filed his return and this motion for summary judgment. On January 10, 2013, Petitioner filed a reply to the motion for discovery, requesting the court hold the motion in abeyance until it resolved the issue of whether there is an actual innocence exception to the AEDPA bar. [Entry #12]. Petitioner briefed the issue of an actual innocence exception, referencing the United States Supreme Court's then-pending decision in *McQuiggin v. Perkins*, which Petitioner anticipated would clarify the existence of the actual innocence exception. [Entry #17]. The Supreme Court reached its decision in *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013), on May 28, 2013. On June 12, 2013, the court denied Petitioner's motion for discovery and ordered him to file a supplemental brief addressing *McQuiggin* and all issues raised in Respondent's summary judgment motion. [Entry #18]. Petitioner filed his response on July 1, 2013 [Entry #21], and Respondent filed a reply on July 11, 2013 [Entry #22]. The court's review of the record revealed many pages were missing from Respondent's Appendix attached to the return [Entry #10], requiring the court to order Respondent on

July 15, 2013, to file a complete copy of the Appendix in compliance with the court's
Standard Filing Preferences. [Entry #23]. Respondent complied with the order and filed
a complete copy of the Appendix on July 17, 2013. [Entry #24]. This matter is now
ready for disposition.

III.    Discussion

A.    Federal Habeas Issues

Petitioner states the following three grounds in his habeas petition:

**Ground One:**    Petitioner Murray Adkins was denied effective assistance of counsel
at this trial in violation of the Sixth Amendment of the United States
Constitution.

**Ground Two:**    Petitioner Murray Adkins was denied access to material exculpatory
evidence in this trial in violation of the Fifth Amendment to the
United States Constitution.

**Ground Three:**    Petitioner Murray Adkins is entitled to Habeas Corpus relief based
on his actual innocence.

[Entry #1-1 at 4–7].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit
under the governing law will properly preclude the entry of summary judgment."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will
not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.      Habeas Corpus Standard of Review

1.      Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

9

erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in

10

the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a

11

procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal

---

[2] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court *"outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.   As such, it is an "extraordinary" remedy under *O'Sullivan,* "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533

(1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker,* 517 F.3d 700, 714 (4th Cir.), *cert. denied,* 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state

14

procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.     Ineffective Assistance of Counsel Claim

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, ___, 130 S.Ct. 1473, 1485, (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.,* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.    Analysis

1.    AEDPA's Statute of Limitations

Respondent moves for dismissal, alleging that the petition was not timely filed under the one-year statute of limitations created by the AEDPA. As discussed briefly above, the AEDPA became effective on April 24, 1996, and substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal

courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute provides:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) **the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review**;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) **The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection**.

28 U.S.C. § 2244(d) (emphasis added). Subsection (d)(1)(A) provides that the one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not after collateral review is completed. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within ten days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. *Crawley v. Catoe*,

257 F.3d 395, 398 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. *Harris*, 209 F.3d at 328, n.1 (noting conviction becomes final on the expiration of the 90-day period to seek review by the United States Supreme Court from a state's highest court; *cf. Hill v. Braxton*, 277 F.3d 701 (4th Cir. 2002) (discussing procedure for district court's sua sponte timeliness analysis, noting limitations period begins to run when time for filing certiorari in the United States Supreme Court has elapsed).[3]

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999). "Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." *Crawley v. Catoe,* 257 F.3d at 399.

---

[3] The *Hill* court did not discuss whether the state court that had dismissed the petitioner's appeal was the state court of last resort.

A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Generally, federal courts use Fed. R. Civ. P. 6(a) in computing periods of time under 28 U.S.C. § 2244(d)(2). *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

In 2000, the Fourth Circuit held that the AEDPA's statute of limitations is not jurisdictional, but subject to the doctrine of equitable tolling. The court found that equitable tolling applies only in "those rare instances where—due to circumstances external to the [petitioner's] own conduct—it would be unconscionable to enforce the limitation against the [petitioner]." *Harris*, 209 F.3d at 330. In 2010, the United States Supreme Court squarely considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. at 418 n.8 (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in

*Pace* that the statute would be equitable tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (*quoting Pace*, 544 U.S. at 418)).

Under § 2244(d), the state bears the burden of asserting the statute of limitations. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

### 2.    Petitioner Did Not Timely File His Federal Petition

The undersigned finds Petitioner did not timely file his petition in this matter. He was found guilty and was sentenced on February 17, 2000. [Entry #24 at 19]. Petitioner directly appealed to the South Carolina Supreme Court, which denied his petition on February 19, 2004. [Entry #24-5 at 24–25]. Petitioner's conviction became final for purposes of § 2244(d)(1)(A) on May 19, 2004, the first day after the expiration of the 90 days within which Petitioner could have sought certiorari in the Supreme Court of the United States. *See* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."); Sup. Ct. R. 13(1).

Petitioner filed his PCR application on October 25, 2004, tolling the statute of limitations after 159 days passed. [Entry #24-5 at 81–87]. The circuit court dismissed his PCR application, and the Court of Appeals denied his request for appellate review.  On

May 2, 2008, the South Carolina Supreme Court issued the remittitur, which meant his PCR application was no longer "pending" for purposes of the tolling provision of 28 U.S.C. § 2244(d)(2). *See Holland*, 130 S.Ct. at 2557 (noting tolling pursuant to 28 U.S.C. § 2244(d)(2) does not continue during pendency of any discretionary review of PCR application). The remaining 206 days of the statute of limitations for Petitioner to bring a federal habeas petition expired on November 24, 2008. Accordingly, Petitioner's federal habeas petition, filed October 30, 2012, was filed almost four years too late. The undersigned recommends finding Petitioner is barred from federal habeas review unless he has demonstrated that he diligently has been pursuing his rights and that extraordinary circumstances prevented his timely filing, which could equitably toll the statute of limitations.

### 3.     Petitioner is Not Entitled to Equitable Tolling

To benefit from the doctrine of equitable tolling, Petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland* at 2562 (quoting *Pace*, 544 U.S. at 418); *see also Rouse*, 339 F.3d at 246 (holding that, for equitable tolling to apply, petitioner must show that there was 1) an "'extraordinary circumstance,' 2) beyond his control or external to his own conduct, 3) that prevented him from filing on time.").

#### a.     Petitioner Has Not Demonstrated Reasonable Diligence

The undersigned is of the opinion that Petitioner's untimely filing should not be excused by equitable tolling under *Holland's* two-pronged test. First, Petitioner has not

21

demonstrated he was reasonably diligent in pursuing his rights below. Petitioner's tardiness in filing this Petition in no manner suggests that he diligently pursued his rights.

Respondent argues that Petitioner cannot invoke equitable tolling because he has failed to show he has been pursuing his rights diligently, notably failing to explain the substantial time gaps between (1) the conclusion of the time for seeking direct review and filing of his PCR (160 days) and (2) the dismissal of his PCR appeal and the filing of his habeas action (4 years). Counsel for Petitioner notes that Petitioner contacted an attorney regarding his case "[a]pproximately four years after" his petition for writ of certiorari was denied.  [Entry #21 at 12].  Respondent further argues that even if Petitioner could explain the substantial time gaps and demonstrate that he was pursuing his rights diligently, the record establishes there was no extraordinary circumstance preventing him from timely filing. The undersigned agrees.  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (concluding equitable tolling applies only in rare instances where due to circumstances so external to the petitioner's own conduct, it would be unconscionable to enforce the limitation against the petitioner).

For these reasons, the undersigned is of the opinion that Petitioner has not satisfied the first-prong of *Holland's* two-pronged test for equitable tolling. *Holland* requires a petitioner to establish both prongs of the test to show entitlement to equitable tolling, so the court could end its analysis here.

b.    Petitioner Has Not Demonstrated Extraordinary Circumstance

Independently, the undersigned opines that Petitioner cannot satisfy the second prong of the test because he has not set forth facts that could demonstrate an "extraordinary circumstance" kept him from timely filing this action. Petitioner has not presented any facts sufficient to permit a finding of an extraordinary circumstance. Accordingly, the undersigned is of the opinion that the petition should be dismissed on statute-of-limitations grounds. The filing was untimely, and Petitioner has not presented facts sufficient to support his argument that the limitations period should be equitably tolled.

4.    Petitioner's Claims are Not Saved by an Actual Innocence Exception

Independently, Petitioner contends that his failure to comply with § 2244(d) should be excused on the grounds that he has raised a colorable showing of "actual innocence," in accordance with *McQuiggin*. The *McQuiggin* Court held that a habeas corpus petitioner's failure to comply with the statute of limitations may be excused if he presents newly-discovered, reliable evidence of his actual innocence. *Id.*, 133 S.Ct. at 1928.  Respondent argues that Petitioner has not made the requisite showing because he has not presented any evidence that was not known at the time of his trial. Rather, Respondent contends that all Petitioner has presented to this court is evidence that a third attorney would analyze the evidence presented at trial somewhat differently from the manner in which trial and collateral counsel did.  [Entry #22 at 6].

23

In *McQuiggin,* the Supreme Court vacated the judgment of the Court of Appeals, remanded the case, and held that:

> actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in [*Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851 (1995)] and [*House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064 (2006)], or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S.Ct. 851; *see House*, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S.Ct. 851.

*McQuiggin*, 133 S.Ct. at 1928. The Court explained that "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *Id*.

With the benefit of the *McQuiggin* Court's guidance, a district court may address otherwise time-barred claims if the habeas petitioner can satisfy the *Schlup* miscarriage of justice standard. However, the *McQuiggin* Court repeatedly emphasized the very narrow class of cases where petitioners present newly-discovered evidence that raises a colorable claim of actual innocence. *Id.* at 1935, 1936, and 1933 ("[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new

24

evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' *Schlup*, 513 U.S. at 329 (internal quotation marks omitted)").

The *McQuiggin* Court likewise repeatedly stated that "untimeliness, although not an unyielding ground for dismissal of a petition, does bear on the credibility of evidence proffered to show actual innocence." *Id.*; *see also id.* at 1928, 1935 ("While we reject the State's argument that habeas petitioners who assert convincing actual-innocence claims must prove diligence to cross a federal court's threshold, we hold that the Sixth Circuit erred to the extent that it eliminated timing as a factor relevant in evaluating the reliability of a petitioner's proof of innocence. To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing. Perkins so acknowledges").

In applying the foregoing standard, the undersigned finds that Petitioner has not made a colorable actual-innocence gateway claim. Petitioner argues that the crime scene evidence is sufficient to demonstrate that a reasonable juror would be unlikely to find him guilty beyond a reasonable doubt. The most compelling evidence against Petitioner at trial was Lee's eyewitness testimony identifying Petitioner as having shot Sims. Lee testified that after the shooting, he and Petitioner immediately left the scene. Petitioner argues that the positioning of Sims's body against a tree directly contradicts Lee's

testimony. Petitioner argues that "[t]he doubtful credibility of Lee's testimony in light of physical crime scene evidence leaves the State with nothing more than insubstantial circumstantial evidence." [Entry #21 at 19]. He claims that he is entitled to an evidentiary hearing to more fully develop his claims. *Id.*

Petitioner has not met his burden of proof because he has not presented reliable, newly-discovered evidence that satisfies the *Schlup* standard. Specifically, he has not presented any evidence that was not known at the time of his trial, such DNA evidence that conclusively pointed to another person as the murderer, *contra House*, or a sufficiently-corroborated recantation of Lee, such as that in the two cases Petitioner cites in his brief, *Wolfe v. Johnson*, 565 F.3d 140 (4th Cir. 2009) and *Teleguz v. Pearson*, 689 F.3d 322 (4th Cir. 2012). Rather, Petitioner argues that a third attorney would have analyzed the evidence presented at trial differently from the manner in which trial and collateral counsel did.

Petitioner has submitted the affidavit of private investigator John "Jay" Phillips [Entry #21-4], which reviews SLED crime scene photographs, the statement of Anna Margaret Stanley, and the lack of physical evidence to corroborate Lee's trial testimony. As in *McQuiggin*, Petitioner's "alleged newly discovered evidence, *i.e.*, the information contained in the . . . affidavit[], was "substantially available to [Petitioner] at trial." *McQuiggin*, 133 S.Ct. at 1936. In fact, trial counsel's defense strategy reflected urging the jurors that the state's only evidence tying Petitioner to the murder was Lee's word. [Entry #24-3 at 66 ("The State of South Carolina has come in here and blamed and

accused [Petitioner] of a horrible crime. And they've done it based on the testimony of murderers, murderers and liars.")]. Counsel described Lee as "an admitted liar and a liar who won't admit he's lying. He lied to the police. He's a liar." [*Id.* at 24-3 at 67:24–68:1]. *See also id.* 70:2–72:4.

Trial counsel likewise attacked the state's failure to present physical evidence corroborating Lee testimony:

> Ladies and gentlemen, if you go out to this crime scene – you heard what SLED testified to. There is not one single piece of physical evidence to link [Petitioner] to this crime. They didn't go try and get clothing. They didn't go try and get hair or fibers that people leave at crime scenes. They didn't go and try and get shoe prints. I wish they had gone to [Petitioner's] house. They owe that. They owe that to him; they owe it to this community; they owe it to you to do a job.

*Id.* at 73:17–74:1.

The record reveals that the jury heard and rejected virtually the same evidence as that which Petitioner argues is reliable, newly-discovered evidence. The undersigned finds that the evidence is largely cumulative to the evidence and argument presented by trial counsel, and more significantly, that the evidence (whether or not actually heard by the jury) was available before the trial, aside from Mr. Phillips' affidavit, whose admissibility Respondent reasonably questions. *See* Entry #22 at 19.

In considering that Petitioner's delay in presenting his evidence for over five years after his conviction became final undercuts any possible reliability it might have and he has not "show[n] that it is more likely than not that no reasonable juror would have

27

convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. *See also McQuiggin*, 133 S.Ct. at 1928, 1935–36.

For the foregoing reasons, the undersigned finds that Petitioner's actual innocence claim is insufficient to excuse non-compliance with the limitations period in § 2244(d)(1), and therefore recommends that Respondent's motion for summary judgment be granted.

IV.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment be granted and the petition be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 24, 2013                                          Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).